IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BEVERLY A. WILLIS                                                                                              PLAINTIFF

VS.                                        Civil No. 2:15-cv-02067-PKH-MEF

CAROLYN W. COLVIN                                                                                      DEFENDANT
Acting Commissioner, Social Security Administration


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Beverly A. Willis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background**

Plaintiff protectively filed an application for DIB on November 19, 2012 (Tr. 84), alleging disability since October 1, 2008, due to hip and knee problems.[1] (Tr. 86) Her application was denied initially on March 12, 2013, and upon reconsideration on May 28, 2013, and June 17, 2013. (Tr. 85-98, 99-112, 114-128) Plaintiff requested an administrative hearing (Tr. 141-142), and a hearing was held on January 15, 2014, before the Hon. Glenn A. Neel, Administrative Law Judge ("ALJ"). (Tr. 34-83) Plaintiff was present and represented by a non-attorney advocate, Mr. John

---

[1] At the January 15, 2014 hearing before the ALJ, Plaintiff amended her alleged onset date from October 1, 2008, to February 7, 2011. (Tr. 37-38)

1

Duty. (Tr. 34) Plaintiff and a Vocational Expert ("VE"), Ms. Christy Wilson, testified at the hearing. (Tr. 36-83)

Plaintiff, born in 1951, was 62 years old at the time of the administrative hearing. (Tr. 39) She completed high school and approximately one year of college. (Tr. 39) Plaintiff previously worked as a telephone operator, proofreader, and collator. (Tr. 75) Plaintiff testified that she was terminated from Consolidated Printing, her last full-time job, due to a proofreading error that she made. (Tr. 47-51)

Following the hearing, on May 2, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 11-21) In this decision, the ALJ found Plaintiff met the insured status requirements under Title II of the Act through December 31, 2016. (Tr. 13) He also found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 7, 2011. (Tr. 13) The ALJ determined Plaintiff had the following severe impairments: history of left total hip arthroplasty and right knee arthroplasty, obesity, hypothyroidism, hypertension, and anxiety disorder, not otherwise specified, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14)

In his decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work, except as follows:

> "claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds. She must avoid concentrated exposure to hazards including no driving as part of work. The claimant is able to perform work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, with several variables and use of judgment within limits, and the supervision required is little for routine tasks but detailed for non-routine tasks." (Tr. 15-16)

2

The ALJ further determined that Plaintiff was capable of performing her past relevant work ("PRW") as a telephone operator and proofreader, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 19). The ALJ then concluded Plaintiff had not been under a disability, as defined in the Act, from February 7, 2011 through the date of the decision. (Tr. 20)

Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 31-33), which was denied on February 3, 2015. (Tr. 1-4) Plaintiff then filed this action on April 7, 2015. (Doc. 1) Both parties have filed appeal briefs (Docs. 11-13), and the case is ready for decision.

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *See Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *See Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *See Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents

her from engaging in any substantial gainful activity. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

**III. Discussion**

Plaintiff makes the following arguments on appeal: (1) that the ALJ erred in his credibility determination; (2) that the ALJ's RFC determination is not supported by substantial evidence; and, (3) that the ALJ erred in determining that Plaintiff could perform her PRW. (Doc. 11, pp. 9-15) The Commissioner counters that substantial evidence supports the ALJ's credibility determination,

RFC determination, and the determination that Plaintiff could perform her PRW. (Doc. 13, pp. 3-15)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A. Credibility Determination

Plaintiff argues that the ALJ erred in his credibility determination. In making a credibility determination, the ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors. A review of the record revealed that Plaintiff completed Function Reports on January 15, 2013, and May 24, 2013, wherein she

reported that she was able to prepare meals, with the use of a crockpot or the oven; take care of her personal needs without any reminders; do household chores with some assistance, including laundry, ironing and cleaning; drive a car; shop in stores and on the computer; read and watch television; and, go to church on Sundays and Wednesdays, where she teaches a bible study. (Tr. 259-266, 277-285)

Medical records show that, with regard to Plaintiff's pain in her hip and knee joints, she initially recovered very well from both a left hip replacement in 2008 and a right knee replacement in 2009, both well prior to the relevant time period. (Tr. 440, 416, 417, 475, 426, 429, 430, 431, 432) Plaintiff experienced some pain in her left hip in September 2009, and Dr. Dennis Luter at Arkansas Specialty Orthopaedics noted in his records that radiographs showed the possibility of a broken screw in Plaintiff's left hip. (Tr. 423) Follow up tests on December 9, 2010, ordered by Dr. Charles Barnes, also at Arkansas Specialty Orthopaedics, showed that her knee and hip were in excellent position and that Plaintiff was "stable" following the surgeries. (Tr. 433) Dr. Barnes further concluded the Plaintiff did not need to be reevaluated for two years. (Tr. 433) In June of 2013, Plaintiff began having right knee pain. (Tr. 484) An x-ray of her right knee ordered by Dr. Barnes showed tibial loosening. (Tr. 484) Dr. Barnes informed Plaintiff that revision surgery may be needed; however, Plaintiff elected not to proceed with the surgery. (Tr. 484). In July of 2013, Dr. Barnes removed some fluid from her right knee, and he encouraged her to work on strengthening her quadriceps. (Tr. 489)

Plaintiff also complained of swelling in her feet, ankles, legs. Medical records reveal notations about bilateral pedal edema. (Tr. 319, 331, 461) Dr. Tyree Seals at the Fort Smith Internal Medicine Clinic advised Plaintiff to elevate her legs at night, do light exercises, and to consume a low sodium, low fat diet. (Tr. 319) At a follow up visit, Dr. Trevor Hodge's clinic notes reflect

that Plaintiff was prescribed a diuretic pill for the edema, but that she elected to not take the medication. (Tr. 461)

Medical records also show that while Plaintiff experienced symptoms of hypothyroidism, hypertension, and fatigue, there was very little evidence to support the Plaintiff's allegations that these conditions are disabling.[2]

Plaintiff alleges she was having trouble with her vision. (Tr. 490) Medical records from ophthalmologist, Dr. Blake Geren, show that Plaintiff was being monitored as "glaucoma suspect," and that she had mild-to-moderate cataracts in both eyes. (Tr. 490) Moreover, tests showed that her optic nerve exam was stable, there were no visual field defects from the possible glaucoma, and there was no sign of diabetic retinopathy in either eye. (Tr. 490) Overall, her possible glaucoma was stable with treatment. (Tr. 490)

The ALJ noted Plaintiff's testimony that her last full-time job ended because she was fired for making a mistake, rather than because of any disabling condition. (Tr. 18) Also, at the hearing, Plaintiff did not dispute the ALJ's observation that she had not been to the doctor in six or seven months, except to say that she had a visit with her eye doctor. (Tr. 72) Lastly, Plaintiff testified that she did not take any medication for pain other than over-the-counter medication. (Tr. 73)

Although it is clear that Plaintiff suffers some degree of limitation, the Court finds that there are sufficient reasons in this case for determining that Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible prior to May 2, 2014. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (credibility

---

[2] Office notes from Dr. Holly Jennings, Adult Medicine Specialists, show that adjustments were being made to Plaintiff's hypothyroid medication. (Tr. 454). Dr. Jennings also assessed Plaintiff with associated fatigue. (Tr. 454) Dr. Trevor Hodge's clinic notes show that Plaintiff's hypertension was benign. (Tr. 463) Dr. Christina Jefferson at the Fort Smith Internal Medicine Clinic also assessed Plaintiff with hypertension; yet, she noted that Plaintiff was responding well to current treatment. (Tr. 329)

determination is entitled to deference if supported by good reasons and substantial evidence). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.[3]

### B. RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir.

---

[3] While Plaintiff argues that the ALJ erred in considering Plaintiff's motives, based on the timing of her application, the ALJ set forth other reasons upon which he based his credibility determination. (Tr. 16-19) Thus, the Court finds this argument has no merit.

2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id.* at § 404.1527(c)(2) (emphasis added).

Plaintiff alleges that the ALJ erred in his RFC determination by omitting certain limitations of which Plaintiff complained, including fatigue, hypertension, hypothyroidism, frequent urination, edema, glaucoma and cataracts. When a Plaintiff has multiple impairments, the ALJ is required to consider the combined effect of those impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R § 404.1523. Here, in reviewing Plaintiff's claimed impairments, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 14)

The ALJ also found that in making his RFC determination, he "must consider all of the claimant's impairments, including impairments that are not severe." (Tr. 12) He further found, "[a]fter consideration of the entire record," Plaintiff had the RFC to perform sedentary work with

9

certain exceptions. (Tr. 15-16) Based on Plaintiff's RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as a telephone operator and proofreader. (Tr. 19) These statements are sufficient in the Eighth Circuit to establish that the ALJ properly considered the combined effect of Plaintiff's impairments. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's *symptoms* ... preclude his past work as a janitor" and "[t]he claimant's *impairments* do not prevent him from performing janitorial work ..." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments).

Furthermore, the ALJ properly considered the medical evidence regarding Plaintiff's physical impairments, including Plaintiff's impairments that were not severe, when making the RFC determination. (Tr. 12) In addition to Plaintiff's complaints of symptoms of hypertension and hypothyroidism, which were found to be severe, the ALJ also considered Plaintiff's complaints of fatigue, edema, and frequent urination and vision problems. (Tr. 15) The ALJ found that the medical records did not reflect any consistent pattern of noticeable fatigue. (Tr. 17) As for Plaintiff's complaints of edema, the ALJ found that the medical records revealed a finding of edema; however, despite the finding, Plaintiff's physical examinations were unremarkable with no neurological deficits. (Tr. 17) Medical records show, as they relate to Plaintiff's complaints of frequent urination, that she was prescribed a diuretic, but that she did not actually take the medication. (Tr. 461)

Finally, the ALJ noted Plaintiff's complaints of vision problems, which have prevented her from driving at night. (Tr. 16) Medical records, however, show that Plaintiff's possible glaucoma was stable with treatment, and she had only mild-to-moderate cataracts in both eyes. (Tr. 490) Eye examinations showed that her optic nerve exam was stable from her previous exam, there were no

visual field defects from the possible glaucoma, and there was no sign of diabetic retinopathy in either eye. (Tr. 490)

Plaintiff also alleges that the ALJ's RFC determination was not consistent with Plaintiff's mental limitations. In his Mental Diagnostic Evaluation, Dr. Terry Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner, and she communicated in a reasonably intelligible and effective manner. (Tr. 444) Dr. Efird further found that Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities; to be able to track and respond adequately; to have the mental capacity to persist with tasks if desired; and, to be able to perform basic work like tasks within a reasonable time frame. (Tr. 444) During the evaluation, Plaintiff denied any history of inpatient or outpatient treatment. (Tr. 442) She reported being able to perform basic self-care tasks independently, and the ability to perform household chores adequately. (Tr. 442) Because Dr. Efird's opinion is consistent with his own findings and the evidence of the record as a whole, the ALJ gave his opinion great weight.

Dr. Efird's consultation results were also available to the state agency doctors, Kevin Santulli and Kay M. Gale, when providing their opinions as to Plaintiff's mental RFC. (Tr. 95) The ALJ found that these mental assessments were supported by the evidence of record and were, therefore, given significant weight. (Tr. 18) The opinions were reflected in the ALJ's RFC determination. (Tr. 18)

In addition, Plaintiff alleges the ALJ improperly dismissed the opinion of Dr. Charles Barnes, one of Plaintiff's treating physicians. Dr. Barnes completed a Medical Source Statement on July 18, 2013. There, Dr. Barnes concluded that Plaintiff could sit in a straight chair for eight hours total, could stand and walk for five minutes at a time, and could stand and walk twenty minutes in an eight hour work day. (Tr. 486) He concluded Plaintiff needed assistive devices to

11

stand, walk and balance; needed rest breaks at hourly intervals or less; and, she needed to alternate between sitting and standing at fifteen minute intervals or less. (Tr. 486) He found Plaintiff could never lift or carry over ten pounds; could occasionally push/pull and work above shoulder level; could rarely work in extended position, work over head, or reach; and, she could occasionally grasp or finger with her right and left hands. (Tr. 486-487) Moreover, Dr. Barnes found Plaintiff could never bend, squat, crawl, stoop, crouch, kneel, balance, climb ladders or scaffolds; could occasionally climb stairs and ramps; and, she must completely avoid environmental hazards. (Tr. 487-488) The objective basis for the limitations provided by Dr. Barnes was Plaintiff's previous hip and knee surgeries, and Dr. Barnes concluded that these limitations were permanent. (Tr. 488) The ALJ found that Dr. Barnes's statement was given weight only to the extent that it supported a sedentary RFC, as greater limits provided by Dr. Barnes were not supported by his own treatment records or the record as a whole. Further, while Dr. Barnes treated Plaintiff during the relevant time period, at the time he expressed his opinion in the Medical Source Statement, he had seen Plaintiff only one time in two and a half years. (Tr. 433, 484) At that visit, Dr. Barnes' examination notes show that Plaintiff had excellent range of motion in her left hip with no pain or tenderness; that her right knee had full active extension flexes at 120 degrees; that her knee was stable; and, that her knee had mild tenderness, no significant swelling, no redness and no warmth. (Tr. 484) Although Plaintiff's knee x-ray showed some tibial loosening, she did not elect to have revision surgery at that time. (Tr. 484)

"Because [Dr. Barnes'] determination contradicted other objective evidence in the record, the ALJ's decision to give less weight to [Dr. Barnes'] determination was reasonable." *Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (citing *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating

12

physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted). Moreover, Dr. Barnes' Medical Source Statement was a checkbox form. A treating physician's checkmarks on an MSS form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (*citing Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)).

Lastly, the ALJ gave only some weight to the nonexamining state agency doctors' physical RFC assessment of light work because Plaintiff's combined impairments provided for further restriction to sedentary work. (Tr. 18-19). "[T]he opinions of nonexamining sources are generally . . . given less weight than those of examining sources." *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir.2008).

Upon careful review of the record, the Court finds there is substantial evidence to support the ALJ's RFC determination of sedentary work with the limitations set forth above.

### C. Past Relevant Work

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment that precludes the performance of PRW. *See Kirby v. Sullivan*, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of PRW will the burden shift to the Commissioner to prove that the claimant can perform other work. *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of PRW, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*

      2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

*See Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) (expressly approving the two part test from S.S.R. 82-61).

      Here, the ALJ specifically found that Plaintiff could return to her PRW as a telephone operator and a proofreader. (Tr. 20). In doing so, the ALJ relied upon the opinion of the VE, who opined that Plaintiff's past relevant work as a telephone operator and proofreader were considered sedentary work in the Dictionary of Occupational Titles. *See Gilbert v. Apfel,* 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted).

      Plaintiff testified that as a telephone operator at Cooper Clinic, she would answer calls and direct them to the appropriate department at the clinic. (Tr. 40). She further testified that this job ended when she needed to provide full-time care for her mother, who was suffering from dementia. (Tr. 43) As for her job as proofreader, Plaintiff testified that she reviewed and edited commercial material for printing errors and accuracy. (Tr. 46) After returning from a medical leave of absence for problems with her hip, she was provided the opportunity to do her editing work from a computer, which kept her from having to lift and carry the printed material to and from her desk. (Tr. 49-50)

      Plaintiff argues that the ALJ failed to set forth the requirements of both the telephone operator and the proofreader work. To the contrary, the ALJ set forth the details of those jobs and compared them to his RFC determination. Thus, the Court finds this argument has no merit.

To the extent the remainder of Plaintiff's arguments are a restatement of her claim that the ALJ erred in assessing her RFC, the Court has addressed that argument above, finding no basis for reversal of the ALJ's RFC determination.

Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a telephone operator and a proofreader, as she generally performed it and as that job is generally performed.

## IV. Conclusion

Based on the foregoing, the undersigned recommends affirming the ALJ's decision and dismissing Plaintiff's case with prejudice. **The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of April, 2016.

/s/ Mark E. Ford
HONORABLE MARK. E. FORD
UNITED STATES MAGISTRATE JUDGE